IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:07-CV-156-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DAMON ERIC GORDON, MADEA GORDON, WILLIAM LUTHER PETTY, JR., a/k/a BEAU PETTY, FIRST STAR REALTY, INC., a/k/a FIRST STAR, INC., a/k/a REMAX PRO REALTY, INC., PROSTAR, a/k/a PROSTAR, INC., JOEL WELCH, LINDA WELCH, JODI WELCH, BILLY LASSITER, d/b/a NC REO PROFESSIONALS, EVON DIGREGORIO and JAMES L. MOORING, d/b/a NC REO PROFESSIONALS, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff United States of America ("plaintiff" or "government") filed this action on September 21, 2007, and filed an amended complaint on October 24, 2007. Plaintiff describes the underlying suit as "an action to pierce the corporate veil, and a fraudulent conveyance action under 28 U.S.C. § 3301 et. seq." See Am. Compl. ¶ 2. On October 5, 2007, the court entered a temporary restraining order against defendants (other than James L. Mooring) and allowed prejudgment attachment against certain assets of the defendants. On October 15, 2007, the court held a hearing on the temporary restraining order and extended its effect until October 22, 2007. On defendants' motion, the court extended the temporary restraining order until November 5, 2007, and scheduled a hearing on the preliminary injunction. In plaintiff's amended complaint, plaintiff added James L. Mooring, d/b/a NC REO Professionals, as a defendant and added a reference to Billy Lassiter, d/b/a

NC REO Professionals, as a defendant. Plaintiff sought a temporary restraining order, preliminary injunction, and attachment against Mooring and Lassiter, d/b/a NC REO Professionals. On October 24 and 25, 2007, the court held a hearing on the preliminary injunction. The court also received evidence concerning the request for equitable relief against Mooring and Lassiter, d/b/a NC REO Professionals. The court enters this order to explain its decision.

I.

Plaintiff filed this action to attempt to recover restitution imposed against defendant William Luther Petty, Jr., a/k/a/ Beau Petty ("Petty"), in a federal criminal judgment entered on February 12, 2003, for two counts of bank fraud. Am. Compl. ¶ 16. The victims, First Union National Bank and First Charter National Bank, sustained losses from Petty's bank fraud in the amounts of $1,031,166.12 and $183,210.00, respectively. Id. As of September 19, 2007, Petty has paid a total of $2,998.74 toward the debt, leaving a current balance owed of $1,211,377.38. Id. ¶ 17. Plaintiff alleges that Petty and the individual defendants entered into a scheme to defraud Petty's creditors, including the United States. The government contends that Petty and Damon Gordon made false statements to the North Carolina Licensing Board for General Contractors to obtain Petty's general contractor license. Id. ¶ 67. According to the government, Petty's general contractor license was indispensable to the business operations of Prostar, a/k/a Prostar, Inc., ("Prostar, Inc.") and First Star Realty, Inc., a/k/a First Star, Inc., a/k/a Remax Pro Realty, Inc. ("First Star Realty") (collectively, "the corporate defendants"). Those business operations included building and selling homes on the North Carolina coast. Essentially, the government argues that the individual defendants operated Prostar, Inc. and First Star Realty as a family business or general partnership. Id. ¶¶ 76-79. Petty and the individual defendants allegedly used the corporate defendants to shield Petty's assets and income from his creditors, including plaintiff. Id. ¶¶ 80-84. The government alleges that Petty

directed the corporate defendants to make several fraudulent conveyances to the individual defendants, in violation of 28 U.S.C. § 3301 et. seq. Id.

Plaintiff asks the court to pierce the corporate veil and treat the individual defendants as general partners of Petty. Id. ¶¶ 86-88. Among other relief, plaintiff seeks a preliminary injunction prohibiting the corporate defendants from transferring assets or incurring further indebtedness. Plaintiff also seeks a preliminary injunction against the individual defendants prohibiting them from transferring or disposing of any assets, including real estate, except as necessary to pay for reasonable living expenses, and from incurring additional indebtedness on behalf of Prostar, Inc. and First Star Realty.

II.

A preliminary injunction is a form of extraordinary relief to be granted only sparingly. See Direx Isr., Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991). A request for preliminary injunctive relief in the Fourth Circuit is governed by the four-pronged "hardship balancing" test set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189 (4th Cir. 1977). Under the test, a court must balance: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood of plaintiff's success on the merits; and (4) the public interest. Id. at 194-96. The two more important factors are the possibility of irreparable harm to the moving party and the harm to the opposing party. Id. at 196. If that balance is struck in favor of the plaintiff, it is enough that grave or serious questions are presented and the plaintiff need not show a likelihood of success. Direx, 952 F.2d at 812-13. However, if the balance does not strongly favor the plaintiff, then the plaintiff must show a strong probability of success on the merits. Id. The plaintiff has the burden of establishing that the applicable factors support an injunction. Id. at 812.

3

In this case, the court recognizes that plaintiff has a strong interest in satisfying the judgment against Petty. The dissipation of assets needed to satisfy a potential judgment frequently has been determined to constitute irreparable harm in a prejudgment setting. See United States v. First Nat'l City Bank, 379 U.S. 378, 385 (1965). As to Petty and the corporate defendants, the court finds no irreparable harm in entering an injunction against them. Plaintiff has presented grave or serious questions, including questions concerning Petty's fraudulent conduct. However, there is a strong likelihood that the individual defendants, except for Petty, will be substantially harmed by the requested injunction concerning their assets and the requested injunction will substantially harm their day-to-day lives. Although the evidence indicates that some individual defendants blurred corporate formalities and may have used Prostar, Inc. and First Star Realty to derive personal benefits, the evidence before the court at this juncture does not support the requisite likelihood of success on the merits for plaintiff as to the individual defendants (other than Petty). Finally, the public interest requires that the victims of Petty's criminal conduct be made whole and receive full restitution. As of September 19, 2007, the financial institutions are still owed over $1.2 million. The public interest also requires that the litigation be conducted in an orderly, fair, and efficient manner.

III.

Upon consideration of plaintiff's motion, plaintiff's memorandum in support, the evidence presented at the hearing, and arguments of counsel, the court ORDERS that:

1. Defendants Prostar, a/k/a Prostar, Inc., and First Star Realty, Inc., a/k/a First Star, Inc., a/k/a Remax Pro Realty, Inc., and their agents or assigns, are enjoined from transferring the assets of Prostar, Inc. and First Star Realty, including bank accounts, owned by Prostar, Inc. and First Star Realty, and are enjoined from incurring any further indebtedness.

2. All defendants, and their agents or assigns, are enjoined from withdrawing any funds,

from any bank, including Bank of America and Branch Banking and Trust, or incurring any indebtedness, including credit card indebtedness, on any account in the name of, or for the benefit of Prostar, Inc. and/or First Star Realty.

3. Defendant William Luther Petty, Jr., a/k/a Beau Petty, and his agents or assigns, are enjoined from transferring any real estate without the consent of the United States, or this court, and are enjoined from transferring any other assets except for those needed for his necessary living expenses. Further, Petty shall not exercise the power of attorney granted by Damon and Madea Gordon.

4. Defendants Damon and Madea Gordon shall revoke the power of attorney executed in August 2005 for the benefit of Petty and shall not purport to give Petty any authority over bank accounts, including brokerage accounts, retirement plan accounts, and similar accounts with financial institutions, or any authority to maintain and/or operate any and all business that Damon and Madea Gordon own or control.

5. All defendants, and their agents or assigns, are enjoined from altering or disposing of any documents, records, or data (electronic or otherwise) concerning this lawsuit without the consent of the United States, or further order of this court.

6. Defendants Damon and Madea Gordon shall notify the United States Attorney and the United States Marshal if the Regal boat named <u>WilSea</u> is moved, and shall specify the exact new location of the boat. In addition, during the pendency of this lawsuit, Damon and Madea Gordon shall keep said boat in good repair and insured in the same manner in which it was maintained during the time it was located in North Carolina.

7. Defendants James Mooring, d/b/a NC REO Professionals, and Billy Lassiter, d/b/a NC REO Professionals, shall permit the United States to make a forensic copy of any computers

5

Case 4:07-cv-00156-D   Document 74   Filed 10/29/07   Page 5 of 6

previously owned, used, or in the custody of either corporate defendant, or in the custody of any other defendant (including, but not limited to, two computers currently in the possession of Mooring and one computer currently in the possession of Lassiter), no later than November 13, 2007.

8. The parties shall submit to the court no later than November 13, 2007, a proposed discovery schedule and a schedule concerning an accounting. The discovery schedule shall address discovery issues and the parties' views on scheduling mediation. The parties shall engage in mediation in this case. If the parties cannot agree on a mediation schedule, the court will establish one. As for an accounting, the court anticipates that the accounting shall disclose for all individual defendants anything of value received beginning on May 15, 2001, from either corporate defendant, or from Petty, including, but not limited to debts or expenses paid for each defendant by either Prostar, Inc. and/or First Star Realty, including trips or entertainment paid on his or her behalf. The court also anticipates that the accounting shall disclose all property currently in each defendant's possession or control, which is owned by Prostar, Inc. and/or First Star Realty, or property disposed of, or previously owned by Prostar, Inc. and/or First Star Realty, including payments to or for the benefit of such defendant.

9. The court DENIES plaintiff's motion for writ of attachment, temporary restraining order, and preliminary injunction filed on October 24, 2007, as to James L. Mooring, d/b/a NC REO Professionals, and Billy Lassiter, d/b/a NC REO Professionals, except as set forth above.

SO ORDERED. This the \_\_29\_\_ day of October 2007.

JAMES C. DEVER III
United States District Judge